84 N. J. Eq.                    Ketcham v. Ketcham.

WILLIAM S. KETCHAM, JR.,

v.

GEORGE W. KETCHAM, administrator of William S. Ketcham, Sr., et al.

[Decided June 17th, 1915.]

1. The intestate, who was plaintiff's father, made considerable advances to a lumber dealer, and, being unable to collect, a corporation was formed, and the dealer transferred his stock of lumber to the corporation. The stock was worth about $8,200, and forty shares each were issued to complainant and the intestate. Subsequently it was claimed that the corporation had not been completed according to law, and complainant took possession of the property as custodian. He sold it and lent the proceeds to the intestate, who gave him a note which was intended to protect complainant in case the creditors of the corporation and of the lumber dealer established claims against him. The intestate died, and the note was presented as a claim against his estate. Defendant, the administrator, made objections to the claim to its full amount, and, the claim being a matter of discussion under a partial distribution, the administrator and heirs agreed to complainant's statement that the note was given him as security against any loss which he might suffer in suits by the receiver of the insolvent corporation who was seeking to charge stockholders for the benefit of corporate creditors and in suits by creditors of the lumber dealer.—Held, that under ordinary circumstances such agreement estopped defendant from relying on the statute of limitations, and also estopped complainant from asserting he was entitled to the full amount of the note.

2. In such case, as deceased had a good claim against the lumber dealer and the lending of the assets of the corporation was not a mere attempt to appropriate such assets to the exclusion of others entitled, the parties are entitled to the aid of a court of equity by enjoining any plea of limitations, and are not to be left to their strictly legal remedies.

3. In such case, as complainant had paid the assessments levied against him as a stockholder and discharged pro rata the corporate debts, he should. to obtain equitable relief, sue for the benefit of the corporate receiver, and upon collection of the amount of the note he will be reimbursed for his expenditures and the rights of the several stockholders will be adjudicated; the mere payment of his proportion of the debts not giving complainant the right to sue directly for his own benefit.

Heard on bill, answer, replication and proofs.

*Mr. Jerome T. Congleton,* for the complainant.

*Mr. Scott German,* for the defendant.

EMERY, V. C.

Complainant, William S. Ketcham, Jr., on December 28th, 1908, brought suit against George W. Ketcham as administrator of the estate of their father, William S. Ketcham, Sr., upon a note given by the intestate to complainant for $6,666.64, dated August 6th, 1895, payable to the order of complainant with interest on demand. William S. Ketcham, Sr., died September 25th, 1896, and on October 20th, 1896, the administrator took out the usual rule to limit creditors, upon which an order barring creditors was entered July 21st, 1897. Complainant presented to the administrator a claim upon this note, dated and sworn to on July 20th, 1897, and claiming the entire amount, with interest, as due to him from his father's estate. One plea in the suit at law was that the claim was not presented within the time limited and was therefore barred. Another plea was that of the statute of limitations, and that the causes of action did not accrue within six years before the commencement of the suit (December 20th, 1908). To this plea the complainant as plaintiff replied:

First, that the cause of action did accrue within the six years, and second, that the defendant, on July 20th, 1897, being indebted to complainant on this note, by memorandum, in writing, then signed, promised to pay the moneys due on it

"when plaintiff should be compelled to pay any sum of money by reason of a certain subscription to the capital stock of the Clinton Hill Lumber and Manufacturing Company, which plaintiff had entered into at the request of the intestate, as his agent,"

and that within six years before the suit he had been compelled to pay "a large sum of money," and therefore plaintiff claimed judgment. The judgment claimed was apparently for the whole amount of the note, and not merely to the extent of the amount plaintiff was compelled to pay, the claim being, apparently, that, on the contingency of the payment named, whenever it might

be, the administrator's promise was to be treated as a promise to pay the entire amount of the note. The administrator denied the subsequent promise. On the trial, the plaintiff, as proof of the subsequent promise in writing by the administrator, produced a letter signed by the administrator, dated July 21st, 1897, relating to the claim, as presented under oath, objecting that this amount was not truly owing. This letter is set out in full in the bill, and states substantially that plaintiff's claim should be stated differently, and as being a claim only in case plaintiff was obliged to pay any demand that might be made against him personally by creditors of one Holloway, and also suggesting a form of claim to be put in. On the trial at law the circuit court judge left to the jury the construction of this document and the determination of the question whether it amounted to a new promise by the administrator. Under these instructions, the jury returned a verdict for the plaintiff on this issue of subsequent promise, and upon the other issues joined, and for the whole amount of the note, with interest, being then $12,510.33. The amount paid by plaintiff on account of his liability on the claims of the Holloway creditors was, however, only $3,658.99, paid in or about July, 1906. This was proved in the suit at law. On application for new trial before another circuit judge, this verdict was set aside upon the ground that the construction of the letter or memorandum as being a subsequent promise of the administrator, in writing, was for the court, not the jury, and that error was committed in leaving this question of construction of the instrument to the jury, Circuit Judge Adams saying, that the defendant was, as his substantial right, entitled to the decision by the court, and of this construction as a legal question, and was therefore entitled to a new trial, even though the jury might have, in his opinion (as he expressed it to be), properly construed the instrument. Upon the new trial being directed, the plaintiff filed this bill to enjoin the defendant from setting up the statute of limitations, and other matters and dealings between the complainant and the defendant as administrator relating to the claim which had been put in and his claim for indemnification against liability as subscriber or stockholder of the Clinton Hill Lumber and Manu-

facturing Company, have been set up and proved at length. At the hearing, and on the proofs complainant claims to be entitled to further prosecute the suit at law, asking aid from this court only to enjoin the defence of the statute of limitations, and that this equitable relief should be granted, leaving the plaintiff then in position to prosecute at law the claim against his father's estate upon the note and as for the entire amount. This was the claim and its extent as prosecuted by complainant for his own benefit on the trial, and for this he obtained a verdict on a claim as legally entirely due to him and payable from the estate.

On the hearing of this cause the evidence took a very wide range, embracing the series of litigations referred to in the bill, extending from 1893 to 1908, together with the records in these suits and proceedings.

The facts, so far as they bear upon the question as to complainant's right to the special equitable relief, which he prays, or to his status for any equitable relief of any kind upon his claim, are substantially as follows:

A company, called the Clinton Hill Lumber and Manufacturing Company, was organized in January, 1893, for the purpose (among other things) of taking over the stock of lumber of one Holloway and carrying on the lumber business. All or most of the capital for the business of Holloway had been furnished by or on the credit of William S. Ketcham, Sr., and one object which the Ketchams and Holloway had in view in the organization of the company to take over the business, was to pay or secure this indebtedness of Holloway to William S. Ketcham, Sr. By bill of sale dated January 23d, 1893, Holloway transferred this lumber and other property to the company, the lumber in the transfer being valued at least $8,200, and full-paid shares for that amount were issued to the three Ketchams, decedent and complainant each receiving forty shares and George W. Ketcham two shares. They had subscribed, respectively, for one hundred shares, one hundred shares and five shares, but no further shares than the eighty-two shares were issued to any persons, nor was any further money paid in. The lumber, after this transfer to the company, was in the actual custody of complainant, who was one of its directors and officers.

Subsequently, all of the Ketchams claimed that the incorporation had not been completed according to law, and, under a resolution of directors of the company on February 6th, 1893, complainant was appointed, with one Camfield, custodian of the property. Camfield did not act. The company not going on with its business, later on Holloway himself claimed the property; decedent also claimed an interest in it, under claims against Holloway, and Holloway's creditors claimed it from the Clinton Hill company by the suit above referred to, which was commenced on March 16th, 1893. Complainant now says he thought it well to sell the lumber and saw no harm in loaning the proceeds of sale to his father and taking his note. By arrangement between the three Ketchams, the property was to be sold and disposed of by complainant for the benefit of decedent, and this was actually done shortly after. The complainant sold the lumber and applied the proceeds, $6,666.84, to the use of the decedent, except about $250. All of these appropriations had been made, as appears by complainant's statement and letter of December 20th, 1900 (*Exhibit D 3*), between April 18th, 1893, and April 10th, 1895, and before the giving of the note in question. As to the consideration and circumstances of giving the note, the complainant's further statement in his answers to interrogatories in this suit is, "that my father executed and delivered to me the note in question to secure the moneys which I had received from the sale of the lumber and loaned to him."

The suit in chancery commenced March 16th, 1893, was brought by judgment creditors of Holloway (including the Cumberland Lumber Company) to set aside this bill of sale and transfer to the Clinton Hill lumber company, and it was set aside as a fraud on these creditors by decree November 14th, 1893, affirmed on appeal, *52 N. J. Eq. 576 (1894)*. To this suit William S. Ketcham, Sr., was a party, and a receiver was appointed to take possession of the property of the Clinton Hill lumber company to satisfy the debts decreed to be paid. A further decree was entered in the suit on April 1st, 1895, that the receiver be directed to commence suit against the company and William S. Ketcham, Sr., to recover the property or its pro-

ceeds of sale. This suit was commenced on May 13th, 1895, against the company as an insolvent corporation, and Mr. T. N. McCarter, Jr., was appointed receiver. On June 17th, 1895, the receiver applied for an order for assessing stockholders for unpaid subscriptions to stock, needed to pay the debts proved, amounting then only to $3,359.01. To this proceeding William S. Ketcham, Sr., the complainant, and George W. Ketcham, were parties, and they appeared and answered the petition on June 22d, 1895. Pending these proceedings, and before any order therein, the note in question was given, and this note was for an amount much more than sufficient to pay all the debts proved against the insolvent company, and, if applied for that purpose, to have relieved all the stockholders from assessment. The existence of this note was not disclosed pending this proceeding, but these three stockholders united in resisting the making of the assessment. An order for assessment was made on November 7th, 1895, but this was subsequently reversed as irregularly made by a decree on appeal in 1899. In the meantime, and on September 25th, 1896, William S. Ketcham, Sr., died, and George W. Ketcham was appointed administrator. Subsequently, a new application for assessment was made on November 9th, 1899, and an assessment was directed on June 9th, 1903, to pay the sum of $6,344.97, with interest. The making of this assessment was contested by the complainant and the defendant George W. Ketcham, as administrator and individually, and, among other grounds set up, was the claim that suit should be first brought against the estate of William S. Ketcham, Sr., to recover the value or the proceeds of sale of the property in question, but the existence of this note, which equitably belonged to the company, was not disclosed to the receiver or to the court by the complainant or any of the respondents. All of the stockholders assessed, including complainant, resisted the payment of the assessments in suits at law brought for their collection, but, after long litigation, the complainant on or about July 20th, 1906, paid $3,658.99, the amount due on his assessment.

In the meantime, and after the first irregular assessment, and before the second, and after the death of William S. Ketcham,

Sr., complainant, on July 20th, 1897, presented to his brother George, the administrator, a sworn claim on this note, claiming the whole amount thereof as due to him from the estate, and upon his brother objecting by letter of July 21st, 1897, to receiving this claim as an absolute claim, and that there was then no such claim; and further, that the claim should have been stated as to be pressed only in case he was forced to pay an illegal demand in the Holloway case, or any portion of it, suggested a form of claim to be put in. This letter is the letter referred to in the law suit by plaintiff as the memorandum of July 20th, 1897, and is relied on as the written promise of the administrator, saving the statute of limitations. Following this suggestion complainant put in another claim (not under oath), or rather made a written statement, dated July 22d, 1897, that his claim on this note having been presented to the estate for payment,

"it is presented on the following conditions, viz.:

"*1st.* No payment is demanded except in the contingency of any 'loss or payment being demanded of me, by reason of my relations to the Clinton Hill Lumber and Manufacturing Co.;

2d. No payment of said note to be demanded in case said estate shall otherwise guarantee me, against any loss or payment by reason of connection with said company."

No objection was made to the claim as thus presented. In December, 1900, a distribution of the estate was desired, and the pending claim of the complainant preventing this, further correspondence took place between the brothers in reference to the status of this claim, in the course of which the administrator suggested a statement (*Exhibit C 8*) that the note represented sales of lumber turned over to their father by Holloway, made by complainant as agent of his father, and the proceeds of which sales were applied to payment of notes loaned by their father to Holloway as they came due, and that as during the disposal of the lumber the father had been served with papers in several suits, and complainant's connection with the sale which was merely that of agent and at the request of his father, might render him liable to suit for the value of the lumber, his father agreed to secure him against any loss resulting to him personally,

and so gave the note. Complainant declined to accept this statement as explaining all the facts and gave a counter statement signed by him December 22d, 1900, stating that the note was given to him as security against any loss in suits referred to, being suits pending in chancery or that might be brought against him by reason of his connection with the Clinton Hill lumber company, and further agreeing that on being released from all claims that might be adjudged against him by reason of these suits, that he would destroy the note, and no payment should be demanded.

A partial distribution of the estate was made after the receipt of this statement, which, as will be observed, was about four years after the intestate's death, and while proceedings upon the second assessment against complainant and the estate were pending. Had the complainant in those proceedings disclosed in his own defence the existence of this note held by him against his father's estate for the proceeds of sale of the company's property, and tendered it to the receiver, who was entitled to it, the receiver would, I think, have been entitled to have affirmed the sale of the assets and to have collected it, to the extent needed, and complainant would at once have been relieved from liability. In these proceedings, which were commenced in November, 1899, complainant and the administrator and George W. Ketcham were all parties, and complainant was allowed payment to the extent of forty per cent. upon his stock subscribed for by reason of the company's ownership of this property as transferred to it by Holloway. It was objected in these proceedings that the receiver had a claim against the estate of decedent for the conversion of these chattels to his own use, and that this right of action should be exhausted before an assessment could be made. But this objection was overruled upon the ground that, as the case then appeared upon the evidence, this claim, so far from being admitted, was disputed by the estate, and the receiver had no assets for its prosecution (*64 N. J. Eq. 520*), and it was then further said that the stockholders paying the assessment might be entitled to prosecute in the receiver's name any claim against the decedent for the conversion. No disclosure was then made on behalf of complainant

as to the true condition of affairs, viz., that complainant, as the custodian in charge of the company's property, had sold the company's property and loaned the proceeds to the decedent, taking for his protection decedent's note for the amount of the loan. Had this been disclosed and the note been tendered to the receiver as part of the assets of the company, the assessments would probably not have been directed, as this subsequent production of assets sufficient to pay the debts would have barred the proceedings. And this seems to have been the complainant's own view of his silence on this point, for in a letter to his brother of December 8th, 1907 (*Exhibit D 1*), he says:

"I was elected treasurer of the C. H. L. Co. and later when it was about determined not to proceed with the company I was elected custodian (Camfield resigning) of the property of the Co.—here I was legally in possession of the same. I sold the goods and banked the proceeds and at father's request loaned him the money by paying some of his outstanding notes, &c. In return and as security for his loan I received his note,"

and in the postscript:

"You forgot to see what the outcome might have been had I turned over to the receiver the note and let him collect it, but I worked with all the rest to have the matter settled by the court first as to the rightful owner."

In the proceedings for assessment the "rightful owner" of the property was held to be the company, and the complainant was given the benefit of this ownership by treating his forty shares as paid.

I do not think the conclusion can be resisted that it was the intention of all of the parties not to disclose the existence of this note to the receiver, but to suppress all information as to it, and in the meanwhile to resist to the utmost the collection of the assessments upon their stock to pay the company's debts, which was the only other source for payment. The assessment was directed by decree on June 9th, 1903, from which a joint appeal was taken by complainant and the administrator. In September, 1903, action was brought against complainant by the receiver to recover his assessment, upon which judgment

was obtained and affirmed by the court of errors and appeals November, 1905. On December 26th, 1905, an appeal was taken from the order of June 9th, 1903, which was dismissed, and after this dismissal and about July 24th, 1906, the complainant's assessment was paid to the receiver. Litigation upon the suit by the receiver against the decedent's estate for the recovery of his assessment was pending in the meantime and continued until about 1908. A subsequent application was made to this court on behalf of the administrator to modify the order for assessment against the decedent, on the ground that the whole value of the property transferred should have been applied toward payment of the subscription on his stock alone, and in the course of these proceedings complainant notified the administrator by letter of May 5th, 1909, that he thought he would be the principal witness, if evidence was taken on the application, and that the position he would assume would depend upon how the case was to be fought, and that he was intending to protect his individual rights so far as that is consistent with the facts in the case—the modification, if allowed, would be a second assessment on himself and his brother and the whole burden practically on him. He then insists on his claim against the estate (on the note) and that the estate would finally have to pay the whole bill for both assessments. Complainant at this time was insisting upon the estate indemnifying him for his assessment, and claiming that the note was given as security against this claim also and was not merely held to secure him against claim for the property sold. The administrator, on the other hand, claimed that he had no right to pay the complainant's assessment from the estate, and that the note was given only to secure complainant in case he should be held personally liable for the proceeds of sale. There is no question that the estate paid the entire expenses of the litigation in reference to all these assessments, and the whole course of proceedings shows that all parties intended that complainant's assistance in defending these proceedings for assessment should be accomplished with the concealment or suppression on his part, as well as of the respondents, of the existence of this note until the receiver's litigation was terminated. On this termination complainant,

not being able to bring about the payment of his assessment by the administrator, who conceived that he had no right to pay it, commenced suit on the note, and in his suit claimed the entire amount thereof, with interest, as belonging to himself. In the suit at law the entire amount of the note was apparently treated as due to the complainant from his father's estate, and the conditional promise to pay, in case plaintiff was held liable on the Holloway claim, set up against the administrator, was treated at law as a promise to pay the entire amount on the happening of the condition, and not limited to the amount plaintiff was obliged to pay, as being the true consideration of the note as between the parties thereto.

Upon the partial distribution of the decedent's estate, made in December, 1900, above referred to, the status of complainant's claim was a matter of discussion between him and the administrator and other persons interested, and such partial distribution was made after complainant had made and signed a statement relating thereto, dated December 22d, 1900, that the note had been given him as security against any loss in the suits therein referred to, being suits then pending in the court of chancery, or that might be brought against complainant by reason of his connection with the Clinton Hill Lumber and Manufacturing Company, and that on being released by the heirs from claims that might be adjudged against him by reason of these suits, he would destroy the note so that no payment shall be demanded on the same (*Exhibit C 7*). This statement was accepted as satisfactory for the purposes of the division, as appears by the administrator's letter of May 5th, 1903 (*Exhibit D 9*), in which, referring to the division, he says that before division he wanted it put down in black and white that complainant's paper (the note) was for use only in the contingency of a judgment and, further, "that complainant did this all right."

This statement was made in December, 1900, and before the statute had began to run, and the plain purpose of the offer and of its acceptance was that of delaying the consideration or settlement between the parties of any claim of complainant's upon the note until the termination of the litigations referred to. The

commencement of a suit thereon, at any time before such termination, would or might have required the question of settlement of his claim to be taken up at once, and, for obvious reasons, neither party desired such suit pending the contest with the receiver on the assessments. The object of both parties was to resist the collection of the assessments and also hold in addition the proceeds of sale for the benefit of decedent's estate in which they were all interested. And the procuring and acceptance of this statement, which had and was intended to have the effect of delaying any action or other proceeding on the note until the termination of the proceedings, would, under ordinary circumstances, have the effect of estopping defendant from pleading the running of the statute against suit on the note before complainant had been obliged to pay. Had it been intended that the complainant should be required to admit in writing that the note was held not for its face value, as an existing debt, but only as security for a contingent liability, and that after having obtained this acknowledgment, the complainant was still expected to sue on the note before it became outlawed, in order to have the benefit of it as security, he was entitled to have been so informed at the time, in order that he might bring his suit in time. The statute had then more than two years to run, and had this necessity of a suit on it within that time, to protect complainant's rights to the claim as security, been contemplated by the administrator, the complainant should have been notified. Such suit, if brought before the amount for which it was held as security had been determined, must have resulted in a judgment for the whole amount of the note, which would then have been held in lieu of the security, and might have been required to be paid into court, or otherwise held in trust pending the happening of the contingency and the determination of the amount for which the note was held as security. Otherwise, the complainant would be deprived of his security. Neither party to the statement or acceptance contemplated any such suit on the note, in my judgment, before complainant's liability had been established, but at the time both understood that pending the litigation no such suit should be brought. If this was the understanding, defend-

ant is estopped from setting up the running of the statute during the litigation.

By this statement and its acceptance, and the distribution following thereon, the complainant also on his part was equitably estopped from claiming in any suit on the note, or on his claim more than the amount for which the note was held as security, and his recovery in the suit at law for his own benefit further than this was such a violation of the equitable rights of the administrator, as would disentitle complainant to any purely equitable relief to aid him in his suit on the note, if the further prosecution of the suit related merely to his own rights or property. But the note in his hands is the security or evidence of debt taken on the loan of funds held by him as agent of and in trust for the company, and the equitable rights of all the parties to this suit are based on that ultimate fact.

On the whole evidence as now presented, the case in equity stands thus: The consideration of the note in question was money of the company loaned to decedent, without authority, by complainant, who had this money in his possession as derived from sales of the property of the company, and in equity any recovery upon this note is for the benefit of the company, or the successors to its rights; legally and equitably, the receiver in insolvency has so succeeded; and (the creditors having been paid in full) the receiver would hold the funds if received by him for the benefit of all the stockholders of the company, and for distribution among these stockholders in proportion to their respective interests therein. In such distribution, as it now strikes me, stockholders should be equalized, and those stockholders who have paid their stock subscriptions to the receiver are entitled to have these payments for the company debts refunded proportionately, before any distribution to other stockholders who have not paid. On further consideration these payments of assessments do not now seem to me to be payment of the company's debts by stockholders who stand simply in the relation of sureties to the company, as I formerly suggested in the opinion above referred to. *64 N. J. Eq. 520.* And the reason is that these stockholders' payments are made to and recoverable by the receiver as being purely assets of the company, which the

receiver recovers as such assets and applies to the payment of its debts, as assets received from any other source would be applied. The equities of the stockholders to reimbursement must therefore, as it now strikes me, be worked out by a preference over the other stockholders on the whole equities between the stockholders, as they stand at distribution of its assets after payment of debts, rather than by a supposed immediate right of subrogation for the definite amount paid as surety and recoverable at once from the company as principal debtor, or its successors in title, without regard to the equities between the stockholders. The practical difference between the theories in the working out of the equities lies in this, that if the equity arises from the subrogation of a surety who has paid the principal's debts, then the complainant may upon payment have at once an individual action at law or in equity against a co-surety for contribution, and recovery is limited to a proportionate share of the amount paid, and may also as a surety make individual claim in equity against a co-surety for the benefit of securities or assets of the company held by the co-surety for the common benefit of all sureties. This latter claim would be worked out in a suit between all persons interested in the securities as parties. On the other hand, if the equities between stockholders paying assessments for debts are to be worked out by distribution of the company's assets between stockholders, then the whole amount to which the company, or the receiver, its successor in title, are entitled, must be paid to the receiver as company assets, and the equities then adjusted between the stockholders on distribution.

In this case the complainant, except to hold the proceeds for the benefit of the receiver as representing the stockholders, has no equitable right to the recovery upon this note, and for the purpose of prosecuting this note merely to recover the whole amount for his individual benefit, as he has hitherto done, he is entitled to no equitable aid of any kind, by injunction or otherwise. An equitable remedy will not be granted where the complainant's fundamental claim is inequitable. *Minzesheimer* v. *Doolittle (Court of Errors and Appeals, 1899), 60 N. J. Eq. 394, 398.*

But this suit, although brought in complainant's own name, and, as it appears from his letters before bringing the same, brought for his own personal benefit, to recover the full amount, can now, as it seems to me, be dealt with on the basis of the equitable rights of all the persons interested in the fund, which the note represents, and on the line above indicated, viz., as an action requiring all parties to treat it as. brought for the benefit and use of the receiver for the recovery of assets of the company, and brought upon a note which from its inception belonged to the company as part of its assets, and not to the complainant. And if, in the bringing of the suit at law, complainant had described himself as suing "to the use of the company," or the receiver, there would be no question, in my judgment, that the receiver or the complainant as suing for him, upon the evidence at this hearing, would be entitled to enjoin setting up the statute of limitations. The conclusion cannot be resisted that both complainant and defendant in the whole course of the litigation relating to the assessment from June, 1895, before the note was given, until 1906, when the assessments were collected, intentionally joined in the suppression of the existence of this note to which the receiver all the while was entitled, and to which he is now entitled. And I think it further appears that it was the intention of both complainant and the defendant, as administrator, with the consent of the other parties interested, that a determination or settlement as between complainant and the estate, of the claim made on this note, should not be made by suit thereon or otherwise pending the litigation on the assessments. The expense of this litigation was in the meanwhile borne by the estate upon all the assessments, including complainant's. If, therefore, the receiver himself were now suing on this note for the recovery of money needed to pay debts, and the statute of limitations were pleaded, a case appears entitling him to such injunction. As the money, if recoverable in the suit, is, however, for distribution among stockholders only, a point of difficulty arises, because the complainant and the defendant being the only stockholders who have paid assessments, had previously thereto, and with notice of the claim on them for assessments, arranged a disposition of all the company's assets (being money

in complainant's hands from sales of its property) between complainant and decedent, by which arrangement decedent was to receive the money and complainant to secure him on the making of the loan was to receive an individual note to himself for the whole amount, which note was not to be turned over to the receiver, but to be held pending the litigation. The question now is, whether both these parties, complainant and the administrator, both as to the defences on the note and as to the amount recoverable thereon at law, should not be left in the position in which they have voluntarily put themselves, and be remitted to their legal rights, both as to the recovery on the note and the defences thereto. And if it were a matter of intentional fraudulent misappropriation of the company's funds for their individual benefit, by the loan of its money, and there were no other persons interested, the case would clearly be one, I think, for the refusal of any equitable relief to complainant, against any legal defence, and on the same ground, it might, in case of a recovery of the whole amount for complainant's own personal benefit, bar defendant's right to any equitable relief. But, on the whole situation and circumstances relating to the original *bona fide* claims of the decedent against Holloway, the transfer of the lumber by Holloway to the company, its incorporation and subsequent abandonment and disposal of its property, and the disposition of the proceeds to pay debts incurred by decedent for Holloway, I am satisfied that the appropriation of the company's money for decedent's benefit was not in the nature of actual fraudulent misappropriation, but was made under a *bona fide* claim that there was not in fact a legal corporation, and that decedent had substantial claims on the property and its proceeds for the payment of his claims against Holloway, and that the note was originally given to protect complainant, if he should be held liable for the loan. And, if this be correct, I see no reason why the complainant, if he be now willing from this time forward to prosecute his suit on the note as brought, to the use and for the benefit of the receiver, should not now have appropriate equitable relief against the plea of the statute.

I conclude, therefore, that the complainant is entitled to an injunction against setting up the statute of limitations as prayed,

but only upon the conditions that the suit at law be continued as being to the use of the receiver, and that any moneys recovered therein be paid to the receiver as assets of the insolvent corporation, for payment of distribution under the order of this court. The form in which these conditions should be drawn will be settled on notice, and I will also then hear counsel as to the making of any other conditions of relief to be imposed on complainant, and also as to what further order or direction, if any, should be given, to meet the contingency that the complainant declines to accept the conditions, and elects to proceed with the suit at law standing on any alleged legal rights upon the note, as between him and the administrator, to recover the whole amount for his own benefit.