# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Peter A. Precht, : 
          Petitioner : 
  : 
  : 
        v. : 
  : 
Unemployment Compensation : 
Board of Review, : No. 710 C.D. 2021
         Respondent : Argued: September 13, 2023


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
              HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE CHRISTINE FIZZANO CANNON, Judge
              HONORABLE ELLEN CEISLER, Judge
              HONORABLE LORI A. DUMAS, Judge

OPINION BY
JUDGE COVEY                         FILED: December 18, 2023

Peter A. Precht (Claimant) petitions this Court for review of the Unemployment Compensation (UC) Board of Review's (UCBR) May 27, 2021 order affirming the Referee's decision that denied Claimant UC benefits under Section 402(h) of the UC Law (Law).[1]  There are two issues before this Court: (1) whether the positive steps analysis is applicable to a determination of whether an individual is self-employed under the Law after he has been separated from his employment; and (2) whether Claimant was self-employed under the Law.[2]  After review, this Court affirms.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(h) (referring to self-employment).

[2] Claimant presented two issues in his Statement of Questions Involved: (1) "[w]hether Claimant was self-employed under the Law when he conceived of a video consulting business, and took steps to develop a website for the business, but never launched the business and never

## Facts

Claimant separated from Walman Optical (Employer) on August 6, 2020.[3] *See* Certified Record (C.R.) at 60 (Referee Finding of Fact (FOF) No. 1). The next day, on August 7, 2020, Claimant created Eye C Clearly, LLC, an optical consultation business. *See* C.R. at 60, Referee FOF No. 2; *see also* C.R. at 83, UCBR FOF No. B1. Claimant designed and created a website for his business. *See* C.R. at 83, UCBR FOF No. B4. Claimant spent approximately $2,983.00 in 2020 on advertising for his business. *See* C.R. at 83, UCBR FOF No. B2. Claimant submitted to the Altoona UC Service Center an Internal Revenue Service (IRS) Form 1040 Schedule C for the 2020 tax year (Schedule C) indicating a net loss of $11,473.00 on his business. *See* C.R. at 60, Referee FOF No. 5.

---

performed services in exchange for remuneration[;]" and (2) "[w]hether the 'positive steps' analysis is inapplicable to a determination of whether an individual is self-employed under the Law, and should be abandoned." Claimant Br. at 3. This Court has reordered the issues for ease of discussion. Contrary to the issues stated above, the Dissent implies that the Majority raised its own issues.

[3] The Dissent emphasizes "Claimant's disqualification from receiving the UC benefits due to him **based on his involuntary unemployment** from Employer appears contrary to the purpose and underpinnings of the Law[,]" and "Claimant's unemployment, and resulting economic insecurity, was due to his losing his job **through no fault of his own**." *Precht v. Unemployment Comp. Bd. of Rev.*, ___ A.3d ___ (Pa. Cmwlth. No. 710 C.D. 2021, filed Dec. 18, 2023) (Cohn Jubelirer, P.J., dissenting), slip op. at 24 (emphasis added). However, Claimant stated in his Initial Internet Claim that **Employer discharged him** for violating a work rule. *See* Certified Record (C.R.) at 9. Further, Claimant testified that Employer discharged him for making disparaging remarks about Employer in an email. *See* C.R. at 54. Consequently, the Dissent's emphasis is unwarranted.

The Dissent also states that it "cannot ignore that Claimant was terminated from his employment during the COVID-19 pandemic." *Precht*, ___ A.3d at ___ (Cohn Jubelirer, P.J., dissenting), slip op. at 23. However, the only references to the COVID-19 pandemic in the entire certified record are as follows: in the claim record, wherein it stated that the claim was "NOT COVID RELATED," C.R. at 3; on the notice of hearing, wherein it stated the changes in the UCBR's Regulations due to COVID-19, including, *inter alia*, the use of telephone hearings, *see* C.R. at 45; and Claimant's testimony, wherein he explained why he believed his business would be successful, i.e., "I think that with COVID world [sic], a lot of people -- more people are buying stuff online, so they want to talk to me about it, kind of thing, so[.]" C.R. at 56. Thus, this Court should not be considering the impact thereof as a basis for its decision.

On December 6, 2020, Claimant applied for UC benefits. On January 25, 2021, the Altoona UC Service Center determined that Claimant was ineligible for UC benefits under Section 402(h) of the Law. Claimant appealed and a Referee held a hearing on March 4, 2021. On March 5, 2021, the Referee affirmed the UC Service Center's determination. Claimant appealed to the UCBR, which adopted the Referee's findings of fact, made additional findings of fact, and affirmed the Referee's decision. Claimant appealed to this Court.[4]

On August 22, 2022, Claimant filed an Application for Oral Argument (Application). On August 31, 2022, the UCBR filed an answer opposing the Application. By March 31, 2023 Order, this Court granted Claimant's Application. Oral Argument occurred on September 13, 2023. This case is now ripe for disposition.

## Discussion

Initially, in *Lowman v. Unemployment Compensation Board of Review*, 235 A.3d 278 (Pa. 2020), our Supreme Court explained:

> The [Law] treats "services performed by an individual for wages" as employment *until it is proven* that *the individual is not subject to control and is customarily engaged in an independently established trade, occupation, profession or business*. [Section 4(*l*)(2)(B) of the Law,] 43 P.S. § 753(*l*)(2)(B). The entire scheme of the [Law] is designed around concepts of "employee," "employment" and by extension, employers. The use of the term "self-employment" is one way to describe those scenarios

---

[4] "'Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the findings of fact were unsupported by substantial evidence.' *Miller v. Unemployment Comp. Bd. of Rev*[.], 83 A.3d 484, 486 n.2 (Pa. Cmwlth. 2014)." *Talty v. Unemployment Comp. Bd. of Rev.*, 197 A.3d 842, 843 n.4 (Pa. Cmwlth. 2018).

3

contemplated by the two-factor test in Section [4](*l*)(2)(B) [of the Law] that preclude a finding of employment. While Pennsylvania courts have instead used the term "independent contractor" as a shorthand for those individuals who are not in "employment," we note that the term "independent contractor" appears nowhere in the [Law]. Courts could have used the term "in self-employment" just as readily to describe an individual who is not "in employment" for purposes of the [Law]. In fact, this Court in *Sun Shipbuilding [&] Dry Dock Co. v.* [*Unemployment Compensation Board of Review*], . . . 56 A.2d 254 ([Pa.] 1948) . . . , used the terms independent contractor, self-employed and businessman interchangeably in the [O]pinion dealing with a claimant's eligibility for initial benefits when he quit his job to start his own roofing business. The *Sun Shipbuilding [&] Dry Dock Co.* Court further used the then-extant test in Section [4](*l*)(2)(B) [of the Law] as the springboard to explain the status of the claimant, a proclaimed businessman, as excluded from the definition of "in employment." *Id.* at . . . 254. One who is an independent contractor can equally be described as self-employed.

The General Assembly's use of the term "self-employment" in Section [4]02(h) [of the Law] as a [UC] benefits ineligibility criteria is in sync with Section [4](*l*)(2)(B) [of the Law] because if an individual is not found to be in "employment," he is not an "employe" covered by the [Law]. 43 P.S. § 753(i) (defining "employe" as "every individual . . . who is performing . . . or has performed services for an employer in an employment subject to [the Law][]"). Thus, **we conclude the General Assembly intended that Section [4](*l*)(2)(B) [of the Law] provides the test for determining whether an individual is "engaged in self-employment" as that term is used in Section [4]02(h) [of the Law]. <u>Whether an individual is self-employed</u>, as the term is used in [Section [4]02(h) of the Law], <u>is to be determined through application of the control and independence factors in Section [4](*l*)(2)(B) [of the Law]</u>.**

*Lowman*, 235 A.3d at 297-98 (italics added) (bold and underline emphasis added; footnote omitted).

However, the *Lowman* Court made clear:

Our interpretation of Section [4](*l*)(2)(B) [of the Law] promotes a comprehensive understanding of a claimant's personal services. **Unlike the "positive steps" test, which focuses on a claimant's stand-alone activities**, **Section [4](*l*)(2)(B) [of the Law] requires a structured two-factor analysis** of a claimant's personal services where they are performed **within the context of a work relationship with a third party**.[FN24] In any situation, where the challenging party fails to meet its burden of proof as to both components of Section [4](*l*)(2)(B) [of the Law], the claimant remains eligible for benefits.

> [FN]24 **We express no opinion on the use of a "positive steps" analysis as part of the test for self-employment** embodied in Section [4](*l*)(2)(B) [of the Law] **where the personal services are performed by an individual in a stand-alone context**. *See*[,] *e.g.*, *Buchanan* [*v. Unemployment Comp. Bd. of Rev.*, 581 A.2d 1005 (Pa. Cmwlth. 1990),] and *Teets* [*v. Unemployment Comp. Bd. of Rev.*, 615 A.2d 987 (Pa. Cmwlth. 1992)].

*Lowman*, 235 A.3d at 298 (italics added) (bold and underline emphasis added; footnote omitted).[5]

In *Buchanan*, this Court explained:

This Court well recognizes the purpose and thrust behind the enactment of the Law, which is to compensate those who are unemployed through no fault of their own. **If one undertakes an activity in an entrepreneurial spirit with all intentions of starting a new business, trade, profession or occupation, he becomes a self-employed businessman**. If subsequently his business fails or proves

---

[5] The Dissent contends that by adding emphasis to the above-quoted portions of the *Lowman* Opinion, the Majority is somehow misinterpreting the *Lowman* Court's holding. However, the Majority, unlike the Dissent, is not interpreting the *Lowman* decision. Rather, the Majority is merely emphasizing the *Lowman* language relevant to the instant case. Contrarily, the Dissent repeats throughout its Opinion that our Supreme Court has rejected the positive steps analysis in a third-party context, notwithstanding that the instant case involves self-employment in the *stand-alone* context and does not involve a third party.

5

to be unprofitable[,] he does not have the option of falling back upon [UC] benefits because the Law was not enacted to compensate individuals who fail in their business ventures and become unemployed businessmen. **The Law is clearly not insurance for individual business undertakings**.

*Buchanan*, 581 A.2d at 1008 (emphasis added; citations omitted).

The *Buchanan* Court expounded:

We believe the situation before us warrants a close examination of the cases in which this Court has held an activity engaged in after separation from full-time employment has been considered self-employment. In *Leary v. Unemployment Compensation Board of Review*, . . . 322 A.2d 749 ([Pa. Cmwlth.] 1974), th[is] Court held that a claimant who had formed a corporation for the purpose of construction of buildings after being laid off from employment, who had elected himself president of the corporation and thereafter entered into an agreement to buy a parcel of land[,] was found to be self-employed and, therefore, ineligible for benefits. The date that self-employment began, th[is] Court said, was the date of incorporation because **the act of incorporating was the "only positive move of Leary in establishing his own business**." *Id*. . . . at 750.

In addition, th[is] Court in *Balmer v. Unemployment Compensation Board of Review*, . . . 368 A.2d 1349 ([Pa. Cmwlth.] 1977), found that the claimant was precluded from collecting [UC] benefits because he was self-employed. Specifically, the claimant, after termination of his full-time job, established an independent elevator servicing business by providing capital for office equipment, advertising and insurance. The claimant, who actively participated in performing services by such business and who also received income for his labor, was found to be self-employed, and, therefore, ineligible for [UC] benefits.

The [Pennsylvania Superior C]ourt again found a claimant to be ineligible for benefits in *Alick v. Unemployment Compensation Board of Review*, . . . 166 A.2d 342 ([Pa. Super.] 1960), where, subsequent to separation from his regular job, the **claimant "entered the field of self-**

6

**employment as an air conditioner serviceman**, **advertising his services**, **and listing the same in the telephone book**." *Id.* . . . at 343.

Moreover, [this Court] held that the claimants in *Kirk v. Unemployment Compensation Board of Review*, . . . 425 A.2d 1188 ([Pa. Cmwlth.] 1981)[,] could not receive [UC] benefits due to their self-employment. The claimants in that case, after separation from employment, received a business loan from a bank for the purpose of starting a landscaping business, purchased a tractor and signed a contract to begin subcontracting jobs. [**This Court**] **found the claimants to be self-employed as of the time of the approval of the bank loan because this act was the requisite positive step in embarking upon an independent business venture**.

*Buchanan*, 581 A.2d at 1008 (emphasis added).

The *Buchanan* Court determined that the claimant therein was not self-employed because he "did not form a corporation for the purpose of selling jewelry. He did not advertise, list a telephone number for this alleged business[,] or obtain insurance for his activity." *Id.* at 1009. Similarly, the *Teets* Court determined the claimant therein was not self-employed because "[t]here was no finding and no evidence presented as to the level of time and effort [the] claimant put into this project. [The c]laimant spent only $250[.00] on a sales kit . . . [and the c]laimant received less than $6[.00] in income from her activities."[6] *Teets*, 615 A.2d at 990.

This Court recently considered *Buchanan's* continued applicability in light of *Lowman* in *Collins v. Unemployment Compensation Board of Review*, 281 A.3d 364 (Pa. Cmwlth. 2022). Therein, this Court explained:

---

[6] The Dissent maintains that the Majority misreads *Buchanan* because the *Buchanan* Court considered the totality of the circumstances to determine whether a given claimant is truly engaged in self-employment, not whether a claimant took one positive act. However, the Majority does not rule or posit that one act determines whether a claimant is self-employed for purposes of the Law. Rather, in relying upon the positive steps analysis, the Majority considers the totality of circumstances, including a claimant's positive steps in establishing a business, in making said determination.

7

> After setting forth the [] test in *Lowman*, [our] Supreme Court recognized that ***Lowman* was a situation involving independent contractors**, **which differed from instances "where the personal services are performed by an individual in a stand-alone context**," such as the present case. [*Lowman*,] 235 A.3d at 298 & n.24. In these latter cases, the "positive steps" analysis has traditionally been performed, and [**our**] **Supreme Court "express[ed] no opinion on the use of a 'positive steps' analysis as a part of the test for self-employment embodied in Section [4](***l***)(2)(B) [of the Law]**," as had been done in *Buchanan* and *Teets . . . .* [*Lowman*, 235 A.3d] at 298 n.24 (emphasis added).

*Collins*, 281 A.3d at 370-71 (footnote omitted; emphasis added). "Therefore, as [our] Supreme Court did not disturb our precedent applying the positive steps analysis as a part of the two-prong approach discussed in *Lowman*, [the *Collins* Court] appl[ied] that approach [therein]."[7]  *Collins*, 281 A.3d at 371. Because the instant case also involves self-employment in a stand-alone context, and not in the context of a work relationship with a third party as in *Lowman*, the UCBR did not err by using the positive steps test in its analysis.[8]

_____

[7] The *Collins* Court determined that the claimant therein was not self-employed because

> there [was] no indication in the record that [the c]laimant's online business was intended to replace audiology as her primary means of employment; rather **it was merely a way of turning her hobbies into extra money** by selling her crafts and jewelry at the online equivalent of a flea market[, i.e., Etsy].

*Collins*, 281 A.3d at 375 (emphasis added). Contrarily here, "Claimant admitted that his intention was, and will be, to make the business his primary source of income . . . ." C.R. at 61 (Referee Dec. at 2).

[8] The Dissent insists that the Majority misreads *Collins*, but nonetheless states that in *Collins*, "the panel appropriately looked at the parties' arguments in light of *Lowman*, [and] **accurately observed that *Lowman* did not expressly "disturb" "positive steps" in the stand-alone context**[.]" *Precht*, ___ A.3d at ___ (Cohn Jubelirer, P.J., dissenting), slip op. at 13 (emphasis added). Here, contrarily, the Dissent believes that simply because Claimant has requested that this Court dispense with the positive steps test, this Court "must" do so. *Id.*

8

Notwithstanding all of the above, Claimant insists that this Court, in the stand-alone context, should evaluate self-employment **purely** under the two-part test found in Section 4(*l*)(2)(B) of the Law, as the *Lowman* Court did within the context of a work relationship with a third party. Section 4(*l*)(2)(B) of the Law provides in relevant part:

> Services performed by an individual for wages shall be deemed to be employment subject to [the Law], unless and until it is shown to the satisfaction of the [D]epartment [of Labor and Industry (Department)] that--(a) such individual has been and will continue to be **free from control or direction over the performance of such services** both under his contract of service and in fact; **and** (b) as to such services such individual **is customarily engaged in an independently established trade**, **occupation**, **profession or business**.

43 P.S. § 753(*l*)(2)(B) (emphasis added).

Importantly, when working for a third party, the first prong, i.e., the control factor, is key to determining whether an individual is an independent contractor or an employee. Indeed,

> [f]actors typically considered by reviewing courts with respect to the first prong of the analysis, i.e., whether the claimant was free from direction and control, include:
>
> > whether there was a fixed rate of remuneration; whether taxes were deducted from the claimant's pay; whether the presumed employer supplied equipment and/or training; whether the presumed employer set the time and location for the work; whether the presumed employer had the right to monitor the claimant's work and review his performance; and the requirements and demands of the presumed employer.
>
> *Res*[.] *Staffing, Inc. v. Unemployment Comp*[.] [*Bd.*] *of Rev*[.], 961 A.2d 261, 264 (Pa. Cmwlth. 2008).

9

*Begovic v. Unemployment Comp. Bd. of Rev.*, 234 A.3d 921, 931 (Pa. Cmwlth. 2020).[9] None of the above-listed factors apply to self-employment in a stand-alone context because there is no presumed employer. Rather, the focus is on the claimant's stand-alone activities. Thus, because the first prong of Section 4(*l*)(2)(B) of the Law is not at issue in the stand-alone context, there remains only one part of the test to apply.

In determining whether Claimant meets the second prong of Section 4(*l*)(2)(B) of the Law, i.e., whether Claimant is customarily engaged in an independently established trade, occupation, profession or business, this Court must look to the totality of the circumstances. Because the UCBR focused on Claimant's stand-alone activities using the positive steps analysis, which the *Lowman* Court did not disturb, and is in accord with *Collins*, this Court will do the same.[10]

Claimant asserts that he was not self-employed under the Law because although he conceived of a video optical consulting business and took steps to develop a website for the business, he never launched the business and never performed services in exchange for remuneration. However, remuneration cannot

---

[9] The Dissent maintains that the positive steps test relies on **subjective determinations** rather than applying the Law. However, the fact that there are numerous factors, which may or may not apply to each specific case, does not make the determination **subjective**. The above-quoted well-established factors used to determine *control* are not exhaustive, do not all apply all the time, either do or do not exist, and are also not subjective. Rather, they are simply facts to be considered in making the determination. *See Precht*, ___ A.3d at ___ (Cohn Jubelirer, P.J., dissenting), slip op. at 16 ("[H]ow **many** steps result in disqualification, and what **kind** of steps are enough? These questions invite referees, the [UCBR], and judges to trade the text of the Law for their subjective determinations of whether an individual is truly 'self-employed' based on their evaluations of the 'positive steps' the claimant has taken.").

[10] In contrast to the Dissent, the Majority does not believe this Court must abandon the positive steps test merely because Claimant requests that it do so. Moreover, while the Dissent relies on *Lowman* for a better part of its reasoning, it admits that the positive steps test "was not before the [*Lowman*] Court, so the question was left to be answered another day." *Precht*, ___ A.3d at ___ (Cohn Jubelirer, P.J., dissenting), slip op. at 11. Thus, since the positive steps analysis still applies in the stand-alone context, this Court applies it herein.

be the test in a stand-alone context because otherwise an individual could receive UC benefits, notwithstanding the amount of time he spent operating his independent business and the positive steps he took in furthering his business, thereby, being qualified for UC benefits and self-employed at the same time. Further, "[this Court] ha[s] repeatedly held that a claimant becomes ineligible for benefits once he takes a positive step toward establishing an independent business."[11] *Coleman v. Unemployment Comp. Bd. of Rev.* (Pa. Cmwlth. No. 210 C.D. 2016, filed Dec. 21, 2016), slip op. at 5.[12] Claimant's proposed interpretation is contrary to this Court's long-standing precedent. There is also no requirement under the positive steps test that the business be successful or profitable. *See Roberts v. Unemployment Comp. Bd. of Rev.*, 422 A.2d 911, 912 (Pa. Cmwlth. 1980) ("[O]ne would have to be naive to suppose that the corporation had no activities until it sold its first [product]."). In fact, the opposite is true - only a positive act, such as incorporating, is required.[13] *See id.* Further, "[t]he fact that claimants may have been able and available to take a full-time job, if one had been offered, during the period for which they claim [UC] benefits, <u>does not alter the fact that they were self-employed</u>." *Banyas v. Unemployment Comp. Bd. of Rev.* (Pa. Cmwlth. Nos. 521 & 522 C.D. 2009, filed Oct. 14, 2009), slip op. at 10 n.6 (quoting *Kirk*, 425 A.2d at 1190 (emphasis added)).

---

[11] The Dissent contends "remuneration can be, **and is** part of the test, because the plain text of [] Section 4(*l*)(2)(B) ties self-employment to remuneration." *Precht*, ___ A.3d at ___ (Cohn Jubelirer, P.J., dissenting), slip op. at 18. In addition, the Dissent does not believe Claimant "launched" his business because "there were **no gross receipts**, **no gross profits**, and, ultimately, **no income** from the business." *Id.* at 22. Thus, under the Dissent's reasoning, as long as a claimant's business runs at a loss, he is potentially eligible to receive UC benefits, thereby making UC an insurance policy for any individual establishing his own business. Plainly, that is not the intent of the Law. *See Buchanan*, 581 A.2d at 1008 ("The Law is clearly not insurance for individual business undertakings.").

[12] Unreported decisions of this Court, while not binding, may be cited for their persuasive value. Section 414(a) of the Internal Operating Procedures of the Commonwealth Court, 210 Pa. Code § 69.414(a). The unreported opinions cited herein are cited for their persuasive value.

[13] This Court acknowledges that incorporating is only one of many factors to be considered under the positive steps test.

11

Here, Claimant's Schedule C for his business "EYECCLEARLY LLC," which was admitted into evidence, belies Claimant's assertion that he never launched the business. C.R. at 20. Claimant incorporated his business with the Pennsylvania Department of State, applied for and received an Employer Identification Number, and designed and created a website for his business. *See id*. According to Claimant's Schedule C, Claimant spent $2,983.00 on advertising, $381.00 for legal and professional services, $145.00 on office expenses, $100.00 in supplies, $59.00 on deductible meals, plus $1,963.00 in other expenses,[14] and paid his employee(s) $5,842.00 in "wages (less employment credit[15])."[16] *Id*. Thus, based on the total of these expenses, Claimant declared an $11,473.00 loss for his business.[17] *See id*. It is difficult to fathom how an individual can declare that he sustained an $11,473.00 loss by expending such a significant sum of money on a business he merely conceived, yet never launched. Moreover, Claimant worked in

---

[14] The other expenses included: $21.00 for Visa fees and other business fees; $1,333.00 for TOPEXPLAINERS.COM; $352.00 for FIVERR.COM; and $257.00 for NNA Services, LLC. *See* C.R. at 21.

[15] "The Employee Retention Credit [] is a refundable tax credit for businesses that continued to pay employees while shut down due to the COVID-19 pandemic or had significant declines in gross receipts from March 13, 2020 to Dec[ember] 31, 2021." https://www.irs.gov/coronavirus/employee-retention-credit (last visited Dec. 15, 2023).

[16] The wages reported herein refer to wages Claimant paid his employee(s). *See* https://www.irs.gov/pub/irs-prior/i1040sc--2020.pdf (last visited Dec. 15, 2023) (the Schedule C instructions direct: "**Do not include salaries and wages de**[]**ducted elsewhere on your return or amounts paid to yourself**.") (emphasis added). "[W]e take judicial notice of the [IRS's] Instructions for [Schedule C.]" *Murray Co., Inc. v. Commonwealth*, 401 A.2d 412, 414 (Pa. Cmwlth. 1979).

[17] The Dissent believes that the Majority is fact finding by referencing Claimant's Schedule C; however, it is axiomatic that "[w]here substantial evidence supports the [UCBR's] findings, they are conclusive on appeal." *Sipps v. Unemployment Comp. Bd. of Rev.*, 181 A.3d 479, 484 (Pa. Cmwlth. 2018) (quoting *Ductmate Indus., Inc. v. Unemployment Comp. Bd. of Rev.*, 949 A.2d 338, 342 (Pa. Cmwlth. 2008)). Here, Claimant's Schedule C contains substantial evidence which supports the UCBR's findings. Specifically, the Referee found as a fact, which the UCBR adopted: "[] Claimant submitted a Schedule C for the 2020 tax year indicating a net loss of $11,473[.00]." C.R. at 87.

12

the optical field for at least 13 years. *See* C.R. at 54, 56 ("It's a manner for me to stay in touch with some old -- ex, [sic] from my old safety career with [Employer] and help them with their dress eyewear if ever there will be a consultations [sic]." "These are people that were happy with my optician skills . . . ."). Thus, Eye C Clearly, LLC was not "merely a way of turning [a] hobb[y] into extra money[.]"[18] *Collins*, 281 A.3d at 375. Rather, all of Claimant's above information evidences he took positive steps, involving himself in and embarking on a business, trade, profession[,] or occupation, and thus was "customarily engaged in an independently established trade, occupation, profession or business."[19] 43 P.S. § 753(*l*)(2)(B).

"The [UCBR] is the ultimate finder of fact; questions regarding the weight of evidence and witness credibility are solely within its province." *Lowman*, 235 A.3d at 286 n.8. Here, the UCBR concluded:

> In considering the findings of fact, the [UCBR] concludes that [] [C]laimant had taken sufficient positive acts to establish an[] independent business. [] [C]laimant argues that he was not customarily engaged in an independently established business; however, **the evidence depicts otherwise**. [] [C]laimant was customarily engaged by

---

[18] The Dissent declares: "I read no requirement in the Law that we are to draw the line at whether a claimant's business stemmed from a hobby. Rather, the question is whether, hobby or not, we can say a claimant is self-employed by looking to Section 4(*l*)(2)(B)'s two-part test." *Precht*, ___ A.3d at ___ (Cohn Jubelirer, P.J., dissenting), slip op. at 21 n.14. The Majority does not claim that any requirement exists in the Law. Rather, in distinguishing *Collins*, the Majority noted the *Collins* Court's language. *See supra* note 7.

[19] The Dissent presents a hypothetical which it purports shows the unworkability of the positive steps analysis. Specifically, it posits that if two unemployed teachers decided to make some extra money tutoring and one was hired by a third party, while the other created an LLC, the teacher who created the LLC would be considered self-employed based on the LLC alone. Clearly, based on the Majority's reasoning that would not be the case. However, if teacher two spent $2,983.00 on advertising, $381.00 for legal and professional services, $145.00 on office expenses, $100.00 in supplies, $59.00 on deductible meals, plus $1,963.00 in other expenses, paid his/her employee(s) $5,842.00 in wages (less employment credit), and declared an $11,473.00 loss for his/her business, depending on the UCBR's credibility findings, those factors would indeed weigh in favor of concluding that teacher two was self-employed.

forming and registering his legal entity and by spending money on advertising.

. . . . The [UCBR] recognizes th[e] remedial intent of the Law, but also that the Law was not intended to subsidize self-employed individuals. While [] [C]laimant has not yet received any earnings from his business, there is no indication that he will abandon his business endeavor. Rather, throughout the record[,] he communicated his expectation that his business will be fully operational and profitable.

C.R. at 83 (UCBR Dec. at 1) (emphasis added). This Court discerns no error in the UCBR's reasoning.[20]

This Court well recognizes the purpose and thrust behind the enactment of the Law, which is to compensate those who are unemployed through no fault of their own. *Warden v. Unemployment Comp*[.] [*Bd.*] *of Rev*[.], . . . 454 A.2d 222 ([Pa. Cmwlth.] 1983). **If one undertakes an activity in an entrepreneurial spirit with all intentions of starting a new business**, **trade**, **profession or occupation**, **he becomes a self-employed businessman**. If subsequently his business fails or proves to be unprofitable[,] he does not have the option of falling back upon [UC] benefits because the Law was not enacted to compensate individuals who fail in their business ventures and become unemployed businessmen. *Freas v. Unemployment Comp*[.] [*Bd.*] *of Rev*[.], . . . 191 A.2d 740 ([Pa. Super.] 1963). **The Law is clearly not insurance for individual business undertakings**.

---

[20] The Dissent notes that the burden was not on Claimant in these proceedings. However, the law is well settled that "[i]n deciding whether there is substantial evidence to support the [UCBR's] findings, this Court must examine the testimony in the light most favorable to the prevailing party, . . . giving that party the benefit of any inferences which can logically and reasonably be drawn from the evidence." *Sipps*, 181 A.3d at 484 (quoting *Sanders v. Unemployment Comp. Bd. of Rev.*, 739 A.2d 616, 618 (Pa. Cmwlth. 1999)). Here, the Department was the prevailing party; thus, the Majority properly viewed the evidence in the light most favorable to the Department and gave the Department the benefit of any inferences which could be logically and reasonably drawn therefrom.

*Buchanan*, 581 A.2d at 1008 (emphasis added); *see also Coleman*.

It is the positive steps or activity of establishing a business that disqualifies one from receiving UC benefits. Accordingly, because Claimant has satisfied the independence factor of Section 4(*l*)(2)(B) of the Law by taking positive steps in establishing an independent business, Claimant is self-employed under the Law. *See* C.R. at 20 (Claimant's Schedule C); *see also Salamak v. Unemployment Comp. Bd. of Rev.*, 497 A.2d 951, 954 (Pa. Cmwlth. 1985) ("While the incorporation . . . was not the final act in establishing an independent business enterprise, it is clearly a positive act towards that end."); *Balmer*, 368 A.2d at 1350 ("[The] claimant has admitted actively establishing this business by providing the capital for office equipment, advertising, and insurance."); *Leary*; and *Banyas*.

## Conclusion

Accordingly, this Court holds: (1) that the positive steps analysis is applicable to a determination of whether an individual is self-employed in a stand-alone context under the Law after he has been separated from his employment; and (2) under the positive steps analysis, Claimant is self-employed under the Law.

For all of the above reasons, the UCBR's order is affirmed.

_____
ANNE E. COVEY, Judge

15

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Peter A. Precht,                           :
                    Petitioner             :
                                           :
         v.                                :
                                           :
Unemployment Compensation                  :
Board of Review,                           :      No. 710 C.D. 2021
                    Respondent             :

## O R D E R

AND NOW, this 18th day of December, 2023, the Unemployment Compensation Board of Review's May 27, 2021 order is affirmed.


_____
ANNE E. COVEY, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Peter A. Precht,                :
               Petitioner      :
                              :
           v.                 : No. 710 C.D. 2021
                              : Argued: September 13, 2023
Unemployment Compensation   :
Board of Review,              :
              Respondent    :

BEFORE:     HONORABLE RENÉE COHN JUBELIRER, President Judge
                  HONORABLE PATRICIA A. McCULLOUGH, Judge
                  HONORABLE ANNE E. COVEY, Judge
                  HONORABLE MICHAEL H. WOJCIK, Judge
                  HONORABLE CHRISTINE FIZZANO CANNON, Judge
                  HONORABLE ELLEN CEISLER, Judge
                  HONORABLE LORI A. DUMAS, Judge

**DISSENTING OPINION BY**
**PRESIDENT JUDGE COHN JUBELIRER**      **FILED: December 18, 2023**

This case concerns two important questions. First, should we continue to apply the judicially created "positive steps" test to determine whether a claimant is self-employed in light of its inconsistency with the Unemployment Compensation Law's (Law)[1] plain text and policy underpinnings? Second, can we say a claimant, out of work due to no fault of his own, is "self-employed," and thus ineligible for unemployment compensation (UC) benefits, due to the claimant having taken a few steps to develop a side business, but not earning a penny or providing any services?[2]

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§ 751-919.10.

[2] The Majority rephrases the issues raised by Peter A. Precht (Claimant) as "(1) whether the positive steps analysis is applicable to a determination of whether an individual is self-
**(Footnote continued on next page…)**

I would answer both questions with a resounding "no." As applied here, the "positive steps" test amounts to a judicial rewrite of the otherwise clear statutory text of Section 4(*l*)(2)(B).[3] Accordingly, I must respectfully dissent from the Majority opinion which continues to apply a "positive steps" test in the absence of any demonstration of active, customary engagement in an independent trade or business, and which, relying on it, incorrectly concludes that Peter A. Precht (Claimant) was self-employed and thus ineligible for benefits.

## I. Background

After working for more than 13 years with Walman Optical Company (Employer) as an account manager selling prescription eyewear, Claimant was terminated in August 2020, ultimately qualifying to receive UC benefits based on that separation. During the COVID-19 pandemic, he looked for a new job but could not find employment. Claimant conceived of starting an online business through which he would provide optical services via video consultation. He took steps to begin designing a website for what he hoped would be a sideline business, and he formed a limited liability company (LLC). However, Claimant testified that he never performed **any** services for, nor received **any pay** from, this venture. Claimant continued looking for full-time work, and, at most, devoted 10 hours a week to this endeavor. The Board found Claimant was self-employed and disqualified him from receiving the benefits to which he was otherwise entitled as a result of his separation from employment with Employer.

---

employed under the Law after he has been separated from his employment; and (2) whether Claimant was self-employed under the law." *Precht v. Unemployment Comp. Bd. of Rev.*, __ A.3d __, __ (Pa. Cmwlth., No. 710 C.D. 2021, filed Dec. 18, 2023), slip op. at 1.

[3] 43 P.S. § 753(*l*)(2)(B).

RCJ - 2

The Board did not rely on Claimant's performance of services or receipt of wages, specifying that "[C]laimant has **not yet received any earnings**," but found that Claimant took "positive acts" to establish an independent business by "forming and registering his legal entity and by spending money on advertising." (Board Opinion (Op.) at 1 (emphasis added).) In the Board's view, those "positive acts" were enough to render Claimant "customarily engaged in an independently established business." (*Id.*) From a policy perspective, the Board "recognize[d] [the] remedial intent of the Law, but also that the Law was not intended to subsidize self-employed individuals." (*Id.*) It reasoned that "[Claimant's] expectation that his business will be fully operational and profitable" was enough. (*Id.*)

## II. "Positive Steps"

In considering the continuing vitality of a "positive steps" test, I begin with the Law's text. Section 402 of the Law is a highly consequential part of the UC statutory scheme, as it sets forth 11 distinct reasons claimants may become ineligible for benefits. 43 P.S. § 802. At issue here is Section 402(h), which specifically disqualifies individuals who are "**engaged** in self-employment" from receiving unemployment benefits. 43 P.S. § 802(h) (emphasis added). Of course, critical to determining ineligibility under Section 402(h) is the meaning of "engaged in self-employment." *Id.* Our Supreme Court has made clear that for purposes of Section 402(h), we must look to the two-part self-employment test set forth in the Section 4(*l*)(2)(B) to determine whether a claimant is self-employed, and therefore, ineligible. *Lowman v. Unemployment Comp. Bd. of Rev.*, 235 A.3d 278, 298 (Pa. 2020).

It is helpful to examine Section 4(*l*)(2)(B) in context. Section 4(*l*), the Law's definitional section, defines "employment" for the purposes of the Law as "all personal **service performed** for **remuneration** . . . ." 43 P.S. § 753(*l*)(1) (emphasis added). Section 4(*l*)(2)(B) provides in relevant part:

> **Services performed** by an individual **for wages** shall be deemed to be employment subject to this act, unless and until it is shown to the satisfaction of the [D]epartment [of Labor and Industry (Department)] that--
>
> > (a) such individual has been and will continue to be free from control or direction over the performance of **such services** both under his contract of service and in fact; and
> >
> > (b) as to **such services** such individual is **customarily engaged** in an independently established trade, occupation, profession or business.

43 P.S. § 753(*l*)(2)(B) (reformatted for readability) (emphasis added).

On its face, Section 4(*l*)(2)(B)'s text makes a few points clear. First, key to employment under Section 4(*l*) generally, and Section 4(*l*)(2)(B) in particular, is an individual's **performance of services** for remuneration or wages. This is consistent with the Law's definition of "employe," which requires an individual to "perform[] services." 43 P.S. § 753(i). Thus, the first question the plain text requires in determining whether a claimant is self-employed is whether the claimant performed **services** for **wages**. The text suggests that, if the answer is no, we must conclude that the claimant is not self-employed.

Subsections (a) and (b) confirm that understanding, as they both situate their requirements by referring to "such services," a cross-reference to those "services performed by an individual for wages." 43 P.S. § 753(*l*)(2)(B). Clearly, then, subpart (a), the "control factor," and subpart (b), the "independence factor," *Lowman*, 235 A.3d at 283, both depend on the existence of "services performed . . .

RCJ - 4

for wages." 43 P.S. § 753(*l*)(2)(B). Thus, reading the text with that cross-reference in mind, the control factor requires a claimant to have been free from control over the performance of the claimant's **services performed for wages**, and the independence factor, relevant here, requires that with respect to the claimant's services performed for wages, the claimant must be customarily engaged in an independently established business.

The Law's language fresh in mind, I turn next to the development of this Court's "positive steps" approach in the stand-alone self-employment cases, i.e., cases like this one in which a claimant is alleged to have set up their own business as opposed to working for a third party. This Court began articulating a version of "positive steps" in *Leary v. Unemployment Compensation Board of Review*, 322 A.2d 749 (Pa. Cmwlth. 1974). The *Leary* Court, recognizing that the term self-employment was undefined and that the cases did "not give us a working definition," turned not to Section 4(*l*)(2)(B), but rather to precedent. This reflects, at the outset, that our "positive steps" jurisprudence emerged as a judicial construction of an undefined term. *Leary* examined and found analogous *Salis v. Unemployment Compensation Board of Review*, 190 A.2d 579 (Pa. Super. 1963),[4] in which the Superior Court found a claimant ineligible for benefits as of the week he signed an agreement to operate a clothing store, a store that actually opened and operated. The *Leary* Court explained, for the claimant there, "incorporation, like the execution of the agreement in *Salis*[], was a **positive** but not final **act** in the establishment of an independent business enterprise." *Id.* at 750 (emphasis added). In the Court's view,

---

[4] *Salis* relied on *Alick v. Unemployment Compensation Board of Review*, 166 A.2d 342, 344 (Pa. Super. 1960), which concluded that a claimant, having "embarked upon self-employment subsequent to the separation from his full-time work is disqualified under [S]ection 402(h) of the Law."

the existence of that positive act alone—with no statutory definition to suggest otherwise—rendered the claimant self-employed as of the date of incorporation, and accordingly, ineligible. Notably, the claimant in *Leary* had purchased land and started building houses (i.e., providing services) with his new corporation. *See id.* at 749. Thus, in both of these cases, the issue was not whether the claimants had become self-employed, as neither could dispute they ultimately were self-employed, but **when** their self-employment began.

In several cases post-*Leary*, we turned to the "positive steps" test as the approach to determining stand-alone self-employment, using "positive steps" as a stand-in for a definition of "self-employment." In *Roberts v. Unemployment Compensation Board of Review*, 422 A.2d 911, 912 (Pa. Cmwlth. 1980), we traced the approach back to its origin: "Since *Salis*[], the law of this Commonwealth has been that the positive **act** of establishing an independent business enterprise renders ineligible the principals involved . . . because they are self-employed . . . ." (finding claimants ineligible as of date of incorporation) (emphasis added). *See also, e.g.*, *Kirk v. Unemployment Comp. Bd. of Rev.*, 425 A.2d 1188, 1190 (Pa. Cmwlth. 1981) ("[a] claimant is considered to have embarked upon self-employment . . . when he performs a 'positive act . . . .'"), and *Balmer v. Unemployment Comp. Bd. of Rev.*, 368 A.2d 1349 (Pa. Cmwlth. 1977) (claimant ineligible as of the date of filing fictitious name for business). These "positive steps" cases, or maybe more accurately, "positive act" cases, generated a harsh, but administrable, bright-line rule: **one** positive act could disqualify a claimant under Section 402(h), and self-employment began the date of the "positive act." Notably, **none** of those cases reference Section 4(*l*)(2)(B), using the "positive steps" test in the **absence** of a statutory definition. Moreover, while the cases above concluded that the claimants'

ineligibility began sometime prior to the businesses' provision of services for wages, for example, upon the filing of a document, the claimants in those cases actively engaged in performing services through their established businesses, all received some wages for those services, and some intended for any monies received to be their main income. The Court then examined when that trade or business could be said to have "begun," via the "positive steps" analysis.

Interestingly, while a "positive steps" approach was developing with respect to stand-alone cases, this Court was already applying the Section 4(*l*)(2)(B) test in the context of self-employment with a third party. *See, e.g.*, *Laswick v. Unemployment Comp. Bd. of Rev.*, 310 A.2d 705, 706 (Pa. Cmwlth. 1973) (looking to Section 4(*l*)(2)(B) and finding jewelry demonstrator was an employee of the jewelry company, not self-employed); *Kardon v. Unemployment Comp. Bd. of Rev.*, 396 A.2d 487, 488 (Pa. Cmwlth. 1979) (applying the same and finding real estate agent was not self-employed); *Crenshaw v. Unemployment Comp. Bd. of Rev.*, 412 A.2d 682, 685 (Pa. Cmwlth. 1980) (applying the same and finding consultant for university was not self-employed).

Then, in *Buchanan v. Unemployment Compensation Board of Review*, 581 A.2d 1005 (Pa. Cmwlth. 1990), we considered Section 4(*l*)(2)(B) in a stand-alone self-employment case. The Court had to decide whether a claimant who, after separation from his employer, spent about $2,000 on supplies to make bracelets and necklaces to sell at a flea market, and leased space for a spot to sell his wares there weekly, could be considered self-employed under the Law. *Id.* at 1006-07. At the outset, the *Buchanan* Court acknowledged Section 4(*l*)(2)(B)'s definition, referencing the use of that test in the third-party cases. *Id.* at 1007. It chronicled the "positive steps" cases of *Leary*, *Balmer*, *Alick v. Unemployment Compensation*

*Board of Review*, 166 A.2d 342 (Pa. Super. 1960), and *Kirk*, explaining "they indeed are representative and provide us with a framework in which to analyze the case at bar." *Id.* at 1009. The Court then focused on what the claimant **did not** do, namely, advertise, list a phone number, or get insurance. Ultimately, the Court was persuaded, **turning to Section 4(*l*)(2)(B)**, that the claimant would have had to sell jewelry "on a more consistent basis" or "mov[e] from flea market to flea market" for the Court to find that his activity amounted to "customary engagement in an independently established . . . business . . . ." *Id.* Thus, *Buchanan* signified a departure from the rigidity of *Leary* and its progeny, as the Court couched its holding **not** within the "positive steps" framework, but within the text of Section 4(*l*)(2)(B). *See Buchanan*, 581 A.2d at 1009 ("We decline, however, to find that the act of setting up a booth at a weekly flea market constitutes customary engagement in an independently established trade, occupation, profession or business **under Section 4(*l*)(2)(B)** of the Law.") (emphasis added).

Judge Doyle—quite understandably, given the state of the law until then—dissented, referencing the line of cases that "require[] only that [the claimant] take a 'positive step.'" *Id.* at 1009 (Doyle, J., dissenting). In his view, the "[c]laimant spent over $2,000[] buying the equipment for his business, went through the trouble of leasing space, and actually sold jewelry. . . . [T]his is more than a positive step; it is the conduct of the business itself." *Id.* Thus, the *Buchanan* dissent further reveals that *Buchanan* was not a continuation of *Leary*'s strictures—but was a departure therefrom.

The Court in *Teets v. Unemployment Compensation Board of Review*, 615 A.2d 987 (Pa. Cmwlth. 1992), faced a similar issue: whether a claimant who spent $250 on a sales kit to become part of a "pyramidal sales program" and who earned

$6 in that pursuit was self-employed. *Id.* at 988. Finding *Buchanan*'s analysis directly on point, and acknowledging Section 4(*l*)(2)(B)'s applicability, the Court briskly concluded that, under *Buchanan*, that claimant could not be considered self-employed. *Id.* at 990.

Recently, our Supreme Court addressed Sections 402(h) and (4)(*l*)(2)(B) in the context of a third-party self-employment case. In *Lowman*, the issue was whether a claimant who, after separation from his employer, decided to drive for the ride-share service Uber, was self-employed under Section 402(h), and thus ineligible for benefits. In analyzing that question, the Supreme Court began by emphasizing, without qualification, that Section 4(*l*)(2)(B) provides "**the test** for determining whether an individual is 'engaged in self-employment' as that term is used in Section [402](h)." *Lowman*, 235 A.3d at 298 (emphasis added). Moreover, the Supreme Court rejected the "positive steps" test in the third-party context, reasoning that its

> interpretation . . . promotes a comprehensive understanding of a claimant's personal services. Unlike the 'positive steps' test, which focuses on a claimant's stand-alone activities, Section [4](*l*)(2)(B) requires a structured two-factor analysis of a claimant's personal services when they are performed within the context of a work relationship with a third party.

*Id.* at 298. The *Lowman* Court reiterated that, with respect to both factors, the party challenging a claimant's eligibility shoulders the burden of proof. *Id.*

Applying the statutory two-part test found in Section 4(*l*)(2)(B), the Court determined that, on that record, the claimant was not self-employed; although the claimant's situation satisfied the control factor, it did not satisfy the independence factor. *Id.* at 303-07. In a series of footnotes, the Court provided a window into its perspective on "positive steps." First, footnote 23—which plainly has relevance in both the stand-alone and third-party context—states, "[e]ither a claimant is self-

employed or not.  The concept of referring to activities as 'positive steps' **adds nothing to the analysis** of the **actual services** performed by a claimant." *Id.* at 298 n.23 (emphasis added).  That said, it "express[ed] **no opinion** on the use of a 'positive steps' analysis as **part** of the test for self-employment . . . where the personal services are performed by an individual in a stand-alone context," citing *Buchanan* and *Teets*.  *Id.* at 298 n.24 (emphasis added).

That same year, the Supreme Court addressed the meaning of "customarily engaged" in *A Special Touch v. Department of Labor and Industry*, *Office of Unemployment Compensation Tax Services*, 228 A.3d 489 (Pa. 2020).  Looking to dictionary definitions to determine the plain meaning of the term, Justice Baer explained "the meaning of the phrase 'customarily engaged' requires an individual to be [(i)] usually, habitually, or regularly employed or involved in activity; or [(ii)] employed or involved in activity according to the customs, general practice, or usual order of things."  *Id.* at 503 (internal citation and quotation marks omitted).[5]

With the statutory text, our Court's precedent, and the Supreme Court's recent cases in mind, I must respectfully disagree with the Majority's interpretation of all three.  In its block quotation of *Lowman*, the Majority underlines and bolds where the Supreme Court qualified its interpretation of Section 4(*l*)(2)(B), which discarded "positive steps" "**within the context of a work relationship with a third party**."

---

[5] Notably, in several UC cases of recent memory, the Supreme Court has **reversed** this Court for reading requirements into the Law that do not appear in its text.  *See Lowman*, 235 A.3d at 298 ("the Commonwealth Court's novel pronouncement . . . is facially incompatible with Section [4]02(h) . . . ."); *A Special Touch*, 228 A.3d at 495 ("Rather than engage in a statutory construction analysis," the Commonwealth Court applied a three-part test.); *Danielle Viktor, Ltd. v. Dep't of Lab. & Indus., Bureau of Emp. Tax Operations*, 892 A.2d 781, 801 (Pa. 2006) ("[W]e reject that part of the reasoning of the Commonwealth Court that established some universal requirement to find a 'proprietary' interest based on ownership of assets or sharing in risk in order to meet the independence criterion of the statute.").

*Precht v. Unemployment Comp. Bd. of Rev.*, __ A.3d __, __ (Pa. Cmwlth., No. 710 C.D. 2021, filed Dec. 18, 2023), slip op. at 5 (quoting *Lowman*, 235 A.3d at 298) (emphasis added in *Precht*). It seems to read the foregoing sentence as proof that "positive steps" should not also be discarded in stand-alone cases, as the Supreme Court only explicitly rejected it in third-party cases. Moreover, it seems to interpret footnote 23 of *Lowman*, emphasizing that the Supreme Court expressed no opinion on the continued vitality of "positive steps" in the stand-alone context, to mean that we should continue applying "positive steps."

However, the Supreme Court's pronouncement that Section 4(*l*)(2)(B) is "**the test** for determining whether an individual **is 'engaged in self-employment'**" under Section 402(h) **was not limited** to situations where a claimant provided services for a third party. *Lowman*, 235 A.3d at 298 (emphasis added). Moreover, I construe the *Lowman* Court's expression of no opinion as a simple expression of judicial restraint, not as implicit approval. The **specific** question whether positive steps should also be abandoned in the stand-alone context was not before the Court, so the question was left to be answered another day. What is clear—regardless of whether "positive steps" is a part of our analysis or not—is that we are to apply Section 4(*l*)(2)(B)'s test in all Section 402(h) cases—stand-alone or third-party.

The Majority's reading of *Buchanan* also misses the mark because it does not fully appreciate the key difference, discussed above, between the *Leary* line of cases and *Buchanan*'s departure from it. The Majority block quotes *Buchanan*'s discussion of *Leary*, *Balmer*, *Alick*, and *Kirk*. But a close reading of *Buchanan*, and Judge Doyle's dissent, reveals that the *Buchanan* majority, while describing those cases as "a framework," **did not apply them**. *Buchanan*, 581 A.2d at 1009. Indeed, the *Buchanan* Court insisted on looking at the totality of the circumstances to

determine whether a given claimant is truly engaged in self-employment, not whether, as *Leary* would require, the claimant took one positive act. Had the *Buchanan* majority simply been business as usual, Judge Doyle's perspective would undoubtedly have won the day, as the claimant in that case clearly engaged in one or more "positive steps" to establish his business.

Indeed, neither *Buchanan* nor *Teets* considered only whether the claimants took "positive steps," but expressly examined the **actual activities** of and **services provided** by the allegedly self-employed claimants to determine if they were customarily engaged in an independent business under Section 4(*l*)(2)(B) so as to be considered self-employed. Reviewing those claimants' **actual activities and services**, the Court held that the claimants were **not** customarily engaged in an independent business and, therefore, **not** self-employed. *Teets*, 615 A.2d at 990; *Buchanan*, 581 A.2d at 1009.

The Majority suggests its adherence to "positive steps" is warranted by *Collins v. Unemployment Compensation Board of Review*, 281 A.3d 364 (Pa. Cmwlth. 2022), and accordingly, it concludes the Board did not err in applying it. *Precht*, __ A.3d at __, slip op. at 8-9. I cannot disagree that the Board could have reasonably relied on *Collins* to continue applying "positive steps" as **part** of the inquiry. That said, *Collins'* context reveals why it need not, for purposes of our decision today, be construed as our final word on the matter.[6] There, a three-judge panel of this Court had its first post-*Lowman* opportunity to examine Sections 402(h) and 402(*l*)(2)(B) in a stand-alone self-employment case. The claimant sold jewelry

---

[6] I would also note that the Board here did not simply use the "positive steps" test "in its analysis," *Precht*, __ A.3d at __, slip op. at 9; the Board appears to have used that test as its **only** analysis, focusing **only** on Claimant's registration of the business and spending money on advertising. The Board's arguments do not, in my view, use that analysis as a **part** of the Section 4(*l*)(2)(B) test as required by *Lowman*.

on the online platform Etsy, and the Board found she had formed an LLC, set up a bank account for the business, and sold four pieces, earning approximately $500. *Id.* at 366-67, 373. Given the factual similarities to *Buchanan*—indeed, *Collins* appears to be a digital-age version of *Buchanan*—it is entirely unsurprising that the claimant argued *Buchanan* was analogous and should control. *Id.* at 367-68. Both sides in *Collins* thus situated their arguments within the "positive steps" framework. *Id.* Given that, the panel appropriately looked at the parties' arguments in light of *Lowman*, accurately observed that *Lowman* did not expressly "disturb" "positive steps" in the stand-alone context, but it did not authoritatively declare that we required adherence to "positive steps." *Id.* at 371. Here, by contrast, Claimant expressly asks this Court, sitting en banc, to remain faithful to the plain text of the Law and dispense with "positive steps," an invitation I believe we must accept.[7]

The Majority correctly observes that the control factor is not at issue here, where it is undisputed that Claimant is free from the control of an employer. *Precht*, __ A.3d at __, slip op. at 10. However, the Majority, without explaining precisely why, leaps to concluding that in stand-alone cases, "there remains only one part of the test to apply, **thereby requiring a positive steps analysis.**" *Id.* (emphasis added). First, the Supreme Court in *Lowman* certainly did not say "positive steps" was **required**; the Court only left open the question of whether it could still form **part** of the analysis after *Lowman*. *Lowman*, 235 A.3d at 298 n.24. Nor does *Collins* suggest that "positive steps" is required in applying the independence factor, as we

---

[7] To be clear, I do not believe that "**simply** because [] Claimant has requested that this Court dispense with the positive steps test, [we] 'must' do so." *Precht*, __ A.3d at __ n.8, slip op. at 9, n.8 (emphasis added). Rather, as explained above, when a party asks this Court to dispense with a judge-made test which runs contrary to the plain text of a statute, and which does not enhance our analysis in any meaningful way, I believe we must accept the invitation to dispense with such a test.

merely said that the Supreme Court did not disturb "positive steps," so we would apply it there, ultimately finding the claimant **not** self-employed. *Collins*, 281 A.3d at 371.[8]

The Supreme Court has definitively said "positive steps" has no place in the third-party context, and today, this Court says it is **required** in the stand-alone context. However, I struggle to understand why "positive steps" might add value in stand-alone cases but not in third-party cases. Consider two teachers, both of whom become separated from their employers due to no fault of their own. One decides to enter into an agreement with an online tutoring platform and must provide her own supplies and curriculum. She purchases workbooks, a second monitor, and a tablet and stylus to have a virtual whiteboard. The other forms Tutoring LLC and purchases the same items but prints out a poster to hang on the community bulletin board at her local library to advertise. Let's say both earn approximately the same amount, spend about 10 hours per week on the endeavor, and remain able and available for work. In the Majority's view, we would need **only** to look to the "positive steps" the teacher who formed the LLC took. And under a strict application of *Leary*—like the "positive steps" test applied in this case by the Board—the LLC formation alone may be enough to say **that** teacher became self-employed. But as to the teacher who contracts with the online tutoring platform, despite the steps she took to embark on that venture, we are satisfied to ask, without regard to any "positive steps," whether we can say she is customarily engaged in a trade or business. This scenario bears out the Supreme Court's wise pronouncement—which I believe is equally true in stand-alone and third-party cases—"[e]ither a claimant is self-employed or not. The concept of referring to activities as "positive steps" **adds**

---

[8] Notably, the claimant in *Collins* did actually perform services and receive remuneration. *Collins v. Unemployment Comp. Bd. of Rev.*, 281 A.3d 364, 373 (Pa. Cmwlth. 2022).

**nothing** . . . ." *Lowman*, 235 A.3d at 298 n.23 (emphasis added). Of course, application of Section 4(*l*)(2)(B) to these teachers will differ, as the control factor will only be at issue for the teacher contracting with the online platform. However, assuming the control factor **is met** as to that teacher, it makes no sense to analyze the substance of their activities any differently when looking to the independence factor.

Finally, I strongly believe that this Court's "positive steps" gloss contravenes the long-standing policy-driven interpretive rules we must apply in the UC context. Our Supreme Court has elegantly explained that the "policy considerations underpinning the . . . Law" reflect that it "'was designed to alleviate the rigors of unemployment and most specifically to assuage the distress of the individual unemployed worker.'" *Penflex, Inc. v. Bryson*, 485 A.2d 359, 365 (Pa. 1984) (quoting *Gladieux Food Servs., Inc. v. Unemployment Comp. Bd. of Rev.*, 388 A.2d 678, 681 (Pa. 1978)). For that reason, "the Law is to be **remedial** and **broadly construed** so that employees who become unemployed through no fault of their own are provided with some semblance of economic security." *Darby Twp. v. Unemployment Comp. Bd. of Rev.*, 429 A.2d 1223, 1227 (Pa. Cmwlth. 1981) (emphasis added).

Especially important here is the rule that "eligibility sections . . . must be **liberally** interpreted . . . ." *Penflex, Inc.*, 485 A.2d at 365 (emphasis added). Our Supreme Court has recently reaffirmed that "disqualification provisions should be **narrowly** construed, and a claimant must not be denied compensation unless he is **unequivocally** excluded by the **plain language** of these provisions." *Harmon v. Unemployment Comp. Bd. of Rev.*, 207 A.3d 292, 307 (Pa. 2019) (citing *Penflex, Inc.*, 485 A.2d at 365) (internal quotation marks omitted) (emphasis added). So here,

if two reasonable interpretations of a disqualification provision exist, we must choose the interpretation that leads to less disqualification, not more.

In reciting and applying these long-standing policy principles, we must not forget that unemployment compensation benefits are neither a gift from the taxpayers nor paid for by employers alone. Rather, the UC system creates "insurance against the burden of indigence resulting from the economic insecurity of involuntary employment," *Morrison v. Department of Corrections*, 659 A.2d 620, 624 (Pa. Cmwlth. 1995), and all employees have funds withheld from their paychecks to pay into that system.

Finally, practical realities counsel against continued adherence to a post-*Buchanan* "positive steps" application. The UC system depends on quick, accurate determinations of eligibility, and so in this context, there is a heightened urgency that our rules and guidance be both legally sound **and** readily applicable by UC service centers, referees, and the Board. Post-*Buchanan* "positive steps" does not pass muster when we think about it through this lens of administrability. The early "positive act" cases provided a readily administrable rule: one "step," like incorporation, leads to ineligibility. However, the Majority does not seem to truly endorse that harsh but easily applied test, and *Buchanan* certainly, at the very least, called it into question. *See Precht*, __ A.3d at __, slip op. at 12 n.13 ("This Court acknowledges that incorporating is only one of many factors to be considered under the positive steps test.").

The tension between *Leary* and *Roberts* on the one hand and *Buchanan* and *Teets* on the other generates uncertainty regarding how **many** steps result in disqualification, and what **kind** of steps are enough? These questions invite referees, the Board, and judges to trade the text of the Law for their subjective determinations

of whether an individual is truly "self-employed" based on their evaluations of the "positive steps" the claimant has taken. Indeed, instead of saying the "positive steps" test adds **nothing**, it may be more accurate to say it adds something undesirable— more potential for indeterminacy and unpredictability in a context of a UC system in which claimants desperately need swift and accurate eligibility determinations.

To sum up, it is apparent to me that "positive steps" emerged, and possibly was useful, before the courts correctly recognized that Section 4(*l*)(2)(B) is **the** test for determining self-employment in Section 402(h) cases. The plain language of the Law's two-part self-employment test provides all we need, even in the stand-alone context, to determine whether a given claimant is self-employed. Moreover, *Buchanan*, when read carefully, evinces a departure from the strict application of the "positive **act**" cases leading up to it. Regardless, our Supreme Court has recently reminded us that we must heed the plain text of the Law, *Lowman*, 235 A.3d at 298, and read disqualification provisions narrowly, *Harmon*, 207 A.3d at 307. Therefore, in my view, we should not apply "positive steps," an indeterminate standard of our own creation, when determining whether a claimant is self-employed, and instead remain faithful to the text.[9]

## III.    Claimant's Eligibility under Sections 402(h) and 4(*l*)(2)(B)

Any doctrinal or interpretive disagreements notwithstanding, I cannot agree with the Majority's conclusion that Claimant, on the facts found by the Board, is self-employed, and thus ineligible for UC benefits. First, Section 4(*l*)(2)(B) directs

---

[9] I agree with Claimant's artful observation that "positive steps," which confuses **steps to prepare** or develop a **potential** business, with actually being **engaged** in self-employment, is inconsistent with the statutory language and "a superfluous basis to exclude claimants from eligibility before they have actively engaged in self-employment." (Claimant's Reply Br. at 2.)

us to consider the "services performed . . . for wages." Here, there are **no Board findings**, nor is there **evidence of record**, that **Claimant performed any services** for clients, let alone services for which he received wages. Instead, the Board's findings show that Claimant registered a legal entity, EYE C CLEARLY LLC; spent money on advertising; worked to develop a website; and devoted up to 10 hours a week to formulating and developing this concept. All the while, Claimant remained ready and willing to engage in work. While these various steps taken by Claimant could be viewed as "positive steps" **toward** self-employment, Claimant did **not achieve** or **actually engage** in said self-employment, which is what is disqualifying under the plain text of Section 4(*l*)(2)(B). Because I read Section 4(*l*)(2)(B) to require services performed in exchange for money for a claimant to be considered self-employed, I would, on that basis alone, conclude that Claimant was not self-employed, and therefore, not ineligible for benefits.

The Majority posits

> remuneration cannot be the test in a stand-alone context because otherwise an individual could receive UC benefits, **notwithstanding the amount of time** he spent operating his independent business and the positive steps he took in furthering his business, **thereby being qualified for UC benefits and self-employed at the same time.**

*Precht*, __ A.3d at __, slip op. at 11 (emphasis added).[10] *See also Precht*, __ A.3d at __ n.11, slip op. at 11 n.11 (emphasizing similar concerns). First, quite simply, remuneration can be, **and is** part of the test, because the plain text of Section 4(*l*)(2)(B) ties self-employment to remuneration.[11] However, that hypothetical also

---

[10] The Majority's hypothetical also reveals what common sense, and the statutory text, would confirm: in this context, we are worried about a business that is actually **operating** and a claimant **furthering** that operating business—not a business that is a mere potentiality.

[11] Recall both the control and independence factors' use of "such services," a cross-reference to "[s]ervices performed by an individual for wages." 43 P.S. § 753(*l*)(2)(B).

ignores a key qualification claimants must satisfy to be eligible: ability and **availability** for work under Section 401(d)(1). 43 P.S. § 801(d)(1). Our UC system makes benefits **contingent** on a claimant being, in part, **available** for work because it does not provide benefits to those claimants who are "effectively remove[d] [] from the labor market." *Rohde v. Unemployment Comp. Bd. of Rev.*, 28 A.3d 237, 243 (Pa. Cmwlth. 2011) (quoting *Harwood v. Unemployment Comp. Bd. of Rev.*, 531 A.2d 832, 826 (Pa. Cmwlth. 1987)). Thus, the Majority's statement that if remuneration forms part of the test, a claimant could spend an unlimited amount of time on his business is not true because we could not say, under Section 401(d)(1), that the claimant qualified for UC benefits, as he had removed himself from the labor market by spending **all** his time on his venture, and thus was not available for paid employment elsewhere.

Notwithstanding, even if the Majority were correct with respect to its point about remuneration, in addition to performing services for wages, for an individual to be self-employed, the individual must be free from the direction and control of another and be "**customarily engaged**" in providing those services. 43 P.S. § 753(*l*)(2)(B) (emphasis added). Here, there is no dispute that Claimant was free from direction and control, thus leaving only an inquiry as to whether he was "customarily engaged." Accordingly, the Board's findings of fact would have to show that Claimant was "usually, habitually, or regularly employed or involved in activity." *A Special Touch*, 228 A.3d at 503 (internal citation and quotation marks omitted). In my view, the Board's findings do not support a conclusion of customary engagement. Taken alone, creating a website, spending significantly less than full-time hours per week, and spending money on advertising (about which we have no additional facts) do not ineluctably lead to a conclusion that Claimant was

"habitually . . . employed or involved" in the conduct of a business. *A Special Touch*, 228 A.3d at 503 (internal citation and quotation marks omitted). Put simply, developing a not-yet-operational website and some potential advertisements, without more evidence to tie such action to the provision of services for wages and establish customary engagement, does not make a claimant self-employed.

The Majority reaches the opposite result with respect to the customary engagement requirement by straying from the Law's text and engaging in its own fact-finding. The Majority points to the Schedule C[12] document Claimant attached to his application to rebut Claimant's assertion that he never launched his business. *Precht*, __ A.3d at __, slip op. at 12. While the Majority correctly notes that the "[Board] is the ultimate finder of fact . . . ," *id.* at __, slip op. at 14 (brackets and citation omitted), it nonetheless disregards that axiom of appellate review, combing the Schedule C for additional facts not found by the Board, including specific expenses Claimant incurred, as well as wages it surmises Claimant paid employees. *Id.* at __, slip op. at 12 & nn. 14-16.[13] To the extent the Majority believes these facts

---

[12] The Internal Revenue Service (IRS) instructs taxpayers to "[u]se Schedule C (Form 1040) to report income or (loss) from a business . . . ." IRS, *2022 Instructions for Schedule C (2022)*, https://www.irs.gov/instructions/i1040sc (last visited Dec. 11, 2023).

[13] The Majority explains that its examination of lines of the Schedule C not referenced by the Board is permissible because of the rule that "[w]here substantial evidence supports the [Board's] findings, they are conclusive on appeal." *Precht*, __ A.3d at __, n.17, slip op. at 13 n.17 (quoting *Sipps v. Unemployment Comp. Bd. of Rev.*, 181 A.3d 479, 595 (Pa. Cmwlth. 2018)). However, there is no dispute here that Claimant sustained a business loss, and Claimant has not challenged that particular factual finding on substantial evidence grounds. If Claimant had claimed that substantial evidence did not support the Board's finding that he sustained a $11,473 loss, then of course, the Court would appropriately turn to the Schedule C as evidence to support that finding, and if we reasoned the Schedule C provided substantial evidence, that finding would be conclusive. However, in that scenario, it would not be necessary to look line-by-line, but only to the line where Claimant reported the total loss. It does not follow from the proposition that substantial evidence must support a finding of fact that this Court may make its own findings from evidence of record about which the Board made no specific findings.

are helpful or necessary to its analysis, it should, as we often do, remand this matter to the Board for additional findings of fact.

Further, I disagree with the Majority's finding that Claimant "launched" his business.[14] Looking to the Schedule C and the money Claimant spent, along with the fact that he had formed an LLC and created a website, the Majority muses that "[i]t is difficult to fathom how an individual can declare that he sustained an $11,473.00 loss by expending such a significant sum of money on a business he merely conceived, yet never launched." *Id.* at 11. First, in the abstract, I find it quite simple to fathom how an individual can sustain a significant loss and have meaningfully "launched" no business at all. An individual could lose their job, and that very evening register to form an LLC with the Department of State,[15] apply to receive an Employer Identification Number (EIN) from the IRS,[16] and buy thousands of dollars' worth of merchandise, all online without leaving their home. Accordingly, I can conceive of a scenario where a claimant could have sustained a loss but not have meaningfully "launched" a business. Moreover, the question is not

---

[14] As part of this analysis, the Majority observes that Claimant is not an individual attempting to earn extra money on the side with a hobby. *Precht*, __ A.3d at __, slip op. at 13. It points to testimony, about which the Board made **no findings**, and in which Claimant explains that part of his business will be to help people who were happy with his skills as an optician. *Id.* It concludes, quoting *Collins*, Claimant's business "was not 'merely a way of turning a hobby into extra money.'" *Id.* (brackets and citation omitted). Again, I read no requirement in the Law that we are to draw the line at whether a claimant's business stemmed from a hobby. Rather, the question is whether, hobby or not, we can say a claimant is self-employed by looking to Section 4(*l*)(2)(B)'s two-part test.

[15] Pennsylvania Department of State, *Registration Forms*, https://www.dos.pa.gov/ BusinessCharities/Business/RegistrationForms/Pages/default.aspx (last visited Dec. 15, 2023) ("The Bureau highly encourages online filing as the easiest and fastest way to get your documents processed.").

[16] IRS, *Apply for an Employer Identification Number (EIN) Online*, https://www.irs.gov/ businesses/small-businesses-self-employed/apply-for-an-employer-identification-number-ein-online (last visited Dec. 15, 2023).

whether the business "launched," a term nowhere in the Law; the question is whether a claimant can be considered self-employed under Section 4(*l*)(2)(B)'s two-part test.

Notwithstanding, on this record, even if it were proper for this appellate court to go fact-finding line-by-line through the Schedule C, I do not believe it reveals Claimant "launched" his online business or that this business was not still a conceived of, but unrealized, idea at the time of the Schedule C's filing. Importantly, **the Board made no findings** as to the part of the Schedule C relating to income. My review of that document shows there were **no gross receipts**, **no gross profits**, and, ultimately, **no income** from the business. (Certified Record (C.R.) at 20.) In fact, **the Board explicitly states in its opinion** that "[C]laimant has **not yet received any earnings** from his business . . . . Rather . . . he communicated **his expectation** that his business will be fully operational and profitable." (Board Op. at 1 (emphasis added).) There were no findings that there are, or were, employees, or evidence reflecting what the nature of their employment was. While monies were expended, there is no indication in this document, and no testimony in the record, explaining from where the monies expended came or to whom they went. All that is in the record is Claimant's statement in his questionnaire that "[he] ha[s] used **all savings** to get going"; no evidence challenges this statement. (C.R. at 18 (emphasis added).) All Claimant did before the Referee was agree that he had filed the Schedule C showing a business loss and state that the amounts related to "development." (*Id.* at 57.) Thus, to the extent Schedule C is even relevant, it does not support the Majority's conclusion that Claimant launched his business.[17]

---

[17] Moreover, as a legal matter, I see no language in Section 4(*l*)(2)(B) to suggest we should draw the line at whether a claimant has "launched" a business. As the *Lowman* Court pointed out: "Either a claimant is self-employed or not." *Lowman*, 235 A.3d at 298 n.23.

In my view, the Majority's conclusion of ineligibility does not pass muster under even the version of "positive steps" explained in *Buchanan*, *Teets*, and *Collins*. The Majority endorses the Board's reliance on the facts that Claimant registered an LLC and spent money on advertising, to argue that Claimant was customarily engaged in an independent business. *Precht*, __ A.3d at __, slip op. at 13. However, in *Collins*, we said clearly that "incorporation is just one of the non-exclusive factors" to be considered in determining whether a claimant is engaged in self-employment, which must be determined by all of the circumstances. 281 A.3d at 374.[18] As for Claimant's advertising, there is no evidence that those expenditures went to actually advertising his services to the public rather than, for example, developing advertisements like he was developing the website. It is notable that the burden was **not** on Claimant in these proceedings, but on either Employer or the Department, *Lowman*, 235 A.3d at 286 n.7, **neither of which disputed** Claimant's **eligibility** for benefits based on his separation from Employer.[19] Thus, even if a "positive steps" analysis is a part of the test set forth in Section 4(*l*)(2)(B), I would not conclude that Claimant was engaged in self-employment.

Finally, I must emphasize two points. I cannot ignore that Claimant was terminated from his employment during the COVID-19 pandemic. And I cannot ignore that Claimant's disqualification from receiving the UC benefits due to him based on his involuntary unemployment from Employer appears contrary to the purpose and underpinnings of the Law. Claimant was denied UC benefits at a time when the "[e]conomic insecurity" was vast and the "burden of indigency" heavy.

_____

[18] Notice, too, how *Collins*' explicit "all-facts-and-circumstances" approach is decidedly **inconsistent** with our pre-*Buchanan*, strict "positive **act**" cases like *Leary*.

[19] This raises a concern about whether the Referee and the Board act as truly impartial adjudicators in these types of proceedings where the Department does not appear to support its finding that a claimant is ineligible for benefits due to alleged self-employment.

Section 3 of the Law, 43 P.S. § 752. Nonetheless, because Claimant made efforts towards realizing his idea of an online optical consulting business, he was found to be self-employed, and, thus, disqualified from receiving benefits for which he was otherwise qualified and had paid taxes into the system to receive.

Moreover, while I agree that the Law is not "**insurance for individual business undertakings**[,]" Claimant's unemployment is **not** the result of **his** decision to engage in an "**individual business undertaking**[,]" which was then unsuccessful. *Precht*, __ A.3d at __, slip op. at 15 (quoting *Buchanan*, 581 A.2d at 1008) (emphasis added in *Precht*). Rather, Claimant's unemployment, and resulting economic insecurity, was due to his losing his job through no fault of his own.[20] These circumstances, beyond Claimant's control, clearly call for an award of benefits under the Law. *See* Section 3 of the Law, 43 P.S. § 752 (recognizing the burden that involuntary unemployment can impose on an unemployed worker and setting aside monies "to be used for the benefit of persons unemployed through no fault of their own"). A sad irony of this case is the perverse incentive we create through our misapplication of "positive steps." Had Claimant taken a $10,000 trip to Greece with his savings or spent the 10 hours per week on learning how to fly fish

---

[20] The Majority takes issue with my observation that Claimant lost his job due to no fault of his own. *Precht*, __ A.3d at __, slip op. at 2 n.3. The Majority points out that on his internet initial claims form, in response to the question, "What was the rule you were accused of violating?" Claimant answered "inappropriate remarks in email." (C.R. at 9.) The Majority also points out that in response to the Referee's question, "And what did [your supervisor] tell you was the reason for discharge?" Claimant responded, "Email that had disparaging comments about the company." (C.R. at 54.) However, immediately thereafter, Claimant's lawyer asked, "**did you disparage the company in your email?**" to which Claimant responded, "**no**." (*Id.* (emphasis added).) In addition, there was a companion case under Section 402(e) of the Law, 43 P.S. § 802(e) (disqualifying claimants for "willful misconduct connected to [their] work"), and **Claimant was not found ineligible under Section 402(e)**. (C.R. at 52, 73, 83.) Accordingly, on the record before us, I believe my statement that Claimant was out of work due to no fault of his own is accurate.

instead of taking a few steps to develop what would just be a side business, he would have remained eligible.

In sum, on the facts found by the Board, it erred in finding Claimant ineligible under Section 402(h) as self-employed, as Claimant was not self-employed under Section 4(*l*)(2)(B)'s plain language, the "positive steps," or a combination of the two. The Majority compounds that error by affirming the Board's incorrect determination.

## IV. Conclusion

Put simply, because I cannot conclude that the "positive steps" test, as understood by the Majority, is consistent with the plain text of Section 4(*l*)(2)(B), nor that Claimant can be considered self-employed under either approach, I respectfully dissent.

_____
**RENÉE COHN JUBELIRER**, President Judge

Judge McCullough joins in this dissent.